Clerk, please call the next case. 2090599, C.M. Products v. Flake Counsel, please. Good morning, members of the Court. We please the Court and Counsel Richard Zenz on behalf of C.M. Products. The arbitrator in this case awarded benefits. On review, the Commission unanimously reversed finding no accident and no notice. On further review, the Circuit Court of Lake County reversed the Commission. The arbitrator's decision found a repetitive accident manifesting itself on February 9th of 2001. The plaintiff was employed as a forklift driver. She testified at trial in great detail about the nature of her job, what she did, how long she'd been doing it, and that while she had been moving from one room to another, she felt pain in her neck. That was on a Friday. The pain went away. She finished the day and went home for the weekend. Over the weekend, she testified that the pain subsequently worsened and progressed. On Monday morning, she called into work and said she needed to take a vacation day because she was having problems with her neck. She sought medical treatment. The medical records have no history of an accident. They have no history of what her job is, what she does, absolutely nothing. Moreover, she filed claims for medical benefits under her group policy, stating in her request that it was not work-related. She later then applied for disability benefits after she had had the surgery, again stating that there was no work-related accident. As to notice, the petitioner testified that she didn't initially report the accident. She was afraid that she would in some way be badly treated by the respondent. But she came into work with a light-duty notice, which the respondent accommodated. It also came to light that she had had a prior work injury. She was never badly treated for that. And she remained working. The respondent — What did the circuit court do? What did the circuit court do? The circuit court reversed the commission. What does that mean? I think the circuit court substituted its judgment on a factual issue is what I think it means. I don't know if I understand your question. I mean, yes, the court reversed the commission. But in doing so, I think it substituted its judgment on a factual issue. There was evidence on both sides of this equation, evidence from the petitioner, evidence from respondent's witnesses on notice. I think the other thing that I have a real problem with in the circuit court's decision is the court's statement that the decision of the arbitrator is entitled to, quote, great deference. That flies right in the face of the fact that the commission has de novo review authority here. The commission can assess credibility even based upon the transcripts. And the case law from this Court is very clear on that issue. Case law does not hold that the arbitrator's decisions are entitled to deference, does it? I'm sorry? Does the case law hold that the arbitrator's decision is entitled to deference? No, it does not. The opposite would be true, correct? Yes. And that's my problem with the circuit court's decision, is that the circuit court in essence substituted its judgment on a factual issue. The standard is still manifest weight. And as this Court hears probably more often than not, the evidence has to be plain and obvious that it's a contrary result would obtain. That is not what happened here. There is differing opinions. And on that basis, I think the Court substituted its judgment. The commission recognized this. The commission talked about the fact that the petitioner had a prior claim. Her concerns about being the victim of some retaliatory action were apparently unfounded. The commission also noted the fact that through all this period of time, there was no mention in the medical records. And that's something that the commission has always looked at when analyzing an accident issue, what kind of history has been given in the medical records. The records are silent. In addition to that, we have the petitioner's own statements on requests for group disability benefits and medical benefits saying it's not work-related. The commission further noted that while one of these things standing alone might not be determinative, in this case, they found it to be determinative. That was a factual decision that the commission made. In order to overturn that, then, I think the circuit court needed to say something a little bit more than it's contrary to the weight of the evidence. He doesn't go into any detail. And, again, that's the problem that I have with that. The petitioner also complains that ‑‑ What did that mean? Does that mean the arbitrator's decision is reinstated? I think it does. I mean, the commission found no accident and no notice. But the commission has never reviewed the findings as to benefits. In other words, they said you get nothing. Right. I think what the commission does is if they find no ‑‑ there's a threshold question here. If there's no accident or if there's no notice, then the rest of the issues are moot. I understand. But when the circuit court reversed, wouldn't the circuit court have to remand it back to the commission then to determine benefits to review that? Or can the circuit court just reinstate? He really didn't say he reinstated the arbitrator's decision. Well, I think it's implicit in the decision that if the court reverses the commission that the arbitrator's decision is reinstated. And that's why I asked for the relief that I asked that the commission's decision be reinstated after the circuit court is reversed. So I think this is just the other side of that point. Does that answer your question? Yes, sir. Just one last thing. The petitioner argues she was overburdened by the requirement here of giving notice, talking about how it might be too difficult because she didn't realize this. But I think that argument fails. It's also a factual argument. But even months and months after the alleged accident, she still isn't saying anything about work history, accident history, or what her job duties are in the medical records. And on that basis, the commission's decision was correct. It was not contrary to the weight of the evidence. And that's why I have asked that the decision of the circuit court be set aside and that the commission's decision be reinstated. Thank you. Counsel, please. May it please the Court. My name is Randy Teradish. I represent the petitioner. I'm asking that this Court affirm the circuit court's decision reversing the commission for the reason that the commission failed to address the two most important issues the Court must address when examining whether a repetitive trauma claim is compensable. Those two issues are the physicality of the job and the medical opinions. Before we get too far into that, as you know, a reviewing court may set aside a decision of the commission only if the decision is contrary to law or based on factual findings that are against the manifest weight of the evidence, that being where the opposite conclusion is clearly apparent. There's two overarching hurdles, I think, that you need to address. The first is, and it's a critical issue, the claimant following the alleged injury went to the emergency room, never mentioned that she had sustained a work-related injury, went to her own family physician, never mentioned it, saw the surgeon initially, never mentioned it. What about the fact that she never told any of these people that this accident, that she had a work-related injury or condition? Isn't that significant? Well, she did tell her family doctor on the Tuesday following the accident that she was hurt three days before, and she did call her supervisor the morning, the Monday after the Friday, and she said, I had pain in my neck going from packing to the warehouse. That's what she said. That was her job, driving the forklift machine, the stacker machine from the factory to the warehouse. She did give notice and she did note to her doctor. My answer to your question is simply that none of the histories are inconsistent with her working. And I would suggest that she was going from the packing to the warehouse, driving her stacker. In her mind, is that a case that is clearly compensable? You're asking her to accept the knowledge that a case is compensable even if it's a, if the environment is a cause. She doesn't know this. She's just driving her stacker, and I think it's not that unreasonable that she would not tell her doctors it's work-related, because she doesn't know really if it is going to be found compensable or not. It's not like an acute injury. The commission hung its head. We're, you know, you're saying compensable. That's a conclusion that requires all these little elements under the statute to be made and to be found. But we're talking about just common knowledge. When did this occur? Does it, I mean, did it occur out of work? Did it arise out of work? I mean, I don't know. We see these all the time. It's hard, I think, for people to understand, is this work-related? By just a temporal relationship, wouldn't you say it's work-related? I mean... Well, to answer your question, you know, what was in her mind? Did she want to stick her neck out? I think that's what she was thinking, driving her stacker. It's not an acute injury. It's not that kind of an injury that is clearly in a person who worked in a warehouse since age 20 for 15 years. She was 35 years old when this happened. So I think giving her education and understanding of the law, which is minimal. In 1997, she had pain similar to the pain she experienced in 97, the present pain. And that was a comp pain, which she received benefits for and received a disectomy for. She did not receive any workers' comp benefits. She did not make a claim for workers' comp. The claim she made for workers' comp was a very minor lower back injury. It was an acute injury two years before this injury. The injury you're speaking about happened in 1997, four years before. She had surgery at that time. She did not make a workers' compensation claim. In 1997, she was driving her stacker, and she had surgery at an adjacent level. So... So she didn't testify as a result of the 97 pain. She underwent a cervical disectomy. Oh, she did. But that was not the accident that she filled out the forms for. The accident she filled out the form for, which the commission thought was very important, was a subsequent accident where she was moving a palate and she hurt her lower back. It was a very minor injury. What about the fact the commission noted that the claimant's completion of a disability form in August 2002 indicated that her condition of ill-being was not work-related? Doesn't that enter into this at all, or is that just some anomaly to be ignored? Well, what she checked was, is the injury the result of her employment? Again, I don't think that she understood that if the environment is a cause, then she can make a claim. Well, you're arguing that on some human nature level, these, you know, failures to document this could be excused. Let's assume you're saying she's a lay person. She doesn't know that she needs to document this thing in a certain legal form. And even if that has some superficial appeal, since the commission found that against her, again, the overall question is why is there fighting against a manifest way? You acknowledge all of these things, you excuse them, but you don't get to the big question. Thank you. There's two reasons why. Because both of the doctors opined that her job was a cause of her condition, both the respondent's doctor and the petitioner's doctor. The respondent's doctor, Dr. Avi Bernstein, stated, turning one's head with forces that were excessive and the ranges were at the extreme, as far as one can turn, could cause a disc herniation. Dr. Brackett said turning her head 20 to 12 times per minute for six hours a day for about seven years is a cause of her condition. He said that because she was 35 years old and young, Dr. Brackett said he did not think that her condition was due to a degenerative condition. So there's no question here, both doctors agreed on causation. And the petitioner's job was that she drove this stacker at a high rate of speed in reverse. She was taught to drive in reverse because there's a load in the front and she cannot see. She drove in a warehouse with 22 aisles looking behind her, constantly people and machines about. She drove at full speed, faster than a person could walk, slower than a person could run. She was cranking her head from side to side for seven years looking behind her. She had the same injury in 2007, and she had surgery. She did not make a workers' compensation claim. What about the issue of notice? Isn't that a matter to be determined by the commission, and it has to be against the manifest weight of the evidence to be overturned? She called her supervisor Monday morning following the Friday pain. She said, I hurt myself. Here's what she said. I felt pain going from packing to the warehouse Friday, and it got worse over the weekend. I woke up today in tears. She told her supervisor that. She came back to work Wednesday. She worked light duty in the packing department until her surgery. And the commission found that was insufficient. So why is that against the manifest weight of the evidence? Well, because they didn't consider the statute. Just like the commission did not consider her job, the commission did not consider the medical testimony, the commission did not consider the statute in this case. And the statute says that the Respondent must prove they were unduly prejudiced in order to defeat her claim. So to backtrack, the commission did not look at the physicality of her job. It did not look at the medical opinion which Respondent's doctor agreed to causation. And the Respondent, the commission did not look at the statute. The Respondent failed to provide any evidence that they were prejudiced whatsoever. And, again, she came back to work two days, three days later on a Wednesday. Now, I want you to consider that she, driving the stacker in 1997, she had neck surgery and she was out of work and she came back on that job on light duty. Now she's having the same thing happen a second time, exactly the same thing. And the Respondent wants us to believe that there was no notice, that nobody knew that she was hurt. And the record is clear. She called her supervisor and she told her, I got hurt going from packing to the warehouse or the warehouse to packing. That was her job, driving back and forth. That's the reason the commission decision should be overturned and the circuit court should be affirmed. There's no case law that supports the commission's decision, either on accident or on notice. The case that the commission cited for accident on repetitive trauma was a 1955 case. And, yes, that person filled out a form right after the accident. And the form said no causation. That was the words on the form. When, in that case, there was all kinds of testimony that was in controversy. In that case, there was lots of other evidence for the court to hang its hat on in the case that was cited. In the case that was cited, the fact that the petitioner filled out a form was just one point. There were witnesses who testified that they never saw the accident in it and their testimony was completely different than their recounting of the events. So there was lots of problems with that case. That was not a case simply of filling out an accident form. Thank you, Counsel. Thank you, sir. Counsel, please. Counsel talked a great deal about medical causation. The real issues here are accident and notice. The medical causation is an entirely different issue. The fact remains that when the petitioner went into work, the commission even noted that the petitioner acknowledged she did not identify a work activity as the cause of her neck pain. I said, because my neck is hurting really bad, I'm going to have to go to the doctor. On Friday, it started. It went away. Then this weekend, it just seemed to get worse, so I'm going to the hospital. The commission cited the White case in which the court has held that notice or knowledge of some type of injury does not establish statutory notice. And that's exactly what we have here. We have factual questions that the commission decided in favor of the respondent. Again, I would ask that this court reverse the circuit court and reinstate the commission's decision. Thank you. Thank you, Counsel. The court will take the matter under advisement for disposition. We'll stand at recess for a short period.